**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NGOZIKA J. NWANERI,

     **Plaintiff,**

    **v.**                            **Civil Action No. 22-821 (JDB)**

GEORGE WASHINGTON UNIVERSITY
HOSPITAL,

     **Defendant.**

**MEMORANDUM OPINION**

This dispute arises out of a surgery performed in August 2017 by the plaintiff, Dr. Ngozika Nwaneri, at George Washington University Hospital ("GWUH"). The patient suffered from a non-fatal adverse event during the surgery. GWUH then initiated a peer review of Nwaneri's surgery, which set in motion a chain of events that culminated in the suspension of Nwaneri's surgical privileges. Nwaneri alleges that GWUH mishandled the fallout from the surgery, and in doing so, breached his employment contract, tortiously interfered with his business relations, and discriminated against him. GWUH argues, among other things, that his claims are time barred. For the reasons set forth below, the Court agrees that Nwaneri's claims are untimely and will dismiss the case.

**Background**

**I.    Factual Background**[1]

Nwaneri is "an elder African-American member in the Surgery Department" at GWUH "with a career practice in cardiac, thoracic[,] and vascular surgery." Compl. [ECF No. 28] ("Am.

---

[1] The facts are drawn from Nwaneri's proposed amended complaint because the majority of this Opinion discusses claims brought in it. A court "must assume the truth of all well-pleaded factual allegations in the complaint" at this stage. In re Harman Int'l Indus., Inc. Sec. Litig., 791 F.3d 90, 99 (D.C. Cir. 2015).

Compl.") ¶ 1.   He has been a surgeon for almost four decades and has had a "contractual relationship with GWUH" since 2002.  Id. ¶ 5.  Starting in 2010, he began noticing a "pattern of disparate treatment and discrimination"—including "two frivolous suspensions of vascular privileges"—which he believes was based on "his age, race, and color."  Id. ¶ 6.

On August 21 and 22, 2017, Nwaneri "was involved in a surgery during which a patient suffered from an adverse intra-operative bleeding event."  Am. Compl. ¶ 8.  The patient survived the adverse event and "was subsequently discharged in a satisfactory condition."  Id.   On September 19, 2017, a peer review committee met to review the incident and released an adverse report a day later.  Id. ¶ 9.  Nwaneri alleges that this report "contained several errors," which he "attempted to address" but was unsuccessful.  Id.  The report formed the basis for "adverse decisions" made by the Medical Executive Committee.  Id.

On September 21, 2017 Nwaneri tried to schedule a heart surgery but was informed that his surgical privileges had been suspended.  Am. Compl. ¶ 10.  He had not been given notice of the suspension, which he alleges was "a violation of section 6.3 of the bylaws."  Id.  The problem was cleared up a few days later when the Medical Director "denied any restriction of Dr. Nwaneri's privileges," and Nwaneri performed the heart surgery on September 26.  Id. ¶ 11.

On October 4, 2017, Nwaneri met with the Medical Director and the Chairman of the Department of Surgery.  Am. Compl. ¶ 12.  The Chairman gave Nwaneri an "ultimatum to resign" (which he declined), referred to Nwaneri's age, and "broadly threaten[ed] retaliation."  Id.

The Medical Executive Committee suspended Nwaneri's privileges on October 16, 2017.  Am. Compl. ¶ 13.   He appealed this decision a week later, and an ad hoc committee met on November 1, presumably to review his appeal, and produced a report shortly after.  Id. ¶ 14.  Nwaneri alleges that the committee met "two days after the fourteen days required by bylaw

6.4.2.3." Id.  The Medical Director submitted the report to the Board of Trustees, which requested a second review.  Id. ¶ 16.  That review was completed and sent back to the Board of Trustees by December 12, 2017.  Id.  On that date, "the Board of Trustees permanently affirmed revocation of Dr. Nwaneri's Vascular Surgery privileges," "includ[ing] Cardiac and Thoracic Surgery privileges . . . in violation of the bylaws section 6.4."  Id. ¶ 17.  He was notified of the revocation on December 14.  Id.

A separate committee, the "Fair Hearing Committee," which appears to have the power to reject or accept the Board of Trustee's action, see Am. Compl. ¶¶ 18, 21, convened on April 25, 2018, id. ¶ 18.  Nwaneri alleges that the proceeding was "required to take place within 60 days or before February 12, 2018" under bylaw section 6.5.2.1.  Id.  The committee's report was also allegedly filed late: under bylaw section 6.5.2.3, the committee should have submitted its report by August 29, 2018 but did not submit it until October 30, 2018.  Id.  The report was dated November 1, 2018, and Nwaneri's privileges expired a day earlier, on October 31, 2018.  Id. ¶ 20.

Nwaneri alleges that the "expiration of [his] privileges was premised on an erroneous calculation of cases for re-credentialing and failure to automatically send [him] re-application materials."  Am. Compl. ¶ 23.  Specifically, GWUH should have "relied on cases performed 24 months prior to the privilege expiration" in October 2018, but instead "they relied on cases from 2018 alone."  Id.

The Fair Hearing Committee's report "rejected the GWUH adverse action," restored all of Nwaneri's surgery privileges, and recommended that he perform 30 supervised cases.  Am. Compl. ¶ 21.  Nwaneri appealed this report to the Appellate Panel.  Id. ¶ 22.  The Appellate Panel met to consider his appeal on May 23, 2019, which he alleges was six months overdue under bylaw

section 6.6.2.1.  Id.  In June, the Appellate Panel reduced the number of supervised cases to 10.

Id.

Separately, on November 9, 2017, GWUH had "issued a skewed report to the National

Practitioner Data Bank ('NPDB')," which discussed Nwaneri's privileges to practice medicine.

Am. Compl. ¶ 19.  Although the "erroneous and inflammatory" report was revised a year later,

during that year, the report "damaged Dr. Nwaneri's professional reputation[] and precluded him

from work."  Id.

## II.   Procedural Background

Nwaneri filed an "inquiry" with the Equal Employment Opportunity Commission on April

30, 2021.  See Compl. for a Civil Case [ECF No. 1] ("Compl.") at 12.  The EEOC, however,

determined that his claims were time-barred and issued a right-to-sue letter on February 1, 2022,

informing Nwaneri that he could bring a case in federal district court within 90 days.  See Dismissal

& Notice of Rights [ECF No. 1-2]; Am. Compl. ¶ 25.

Nwaneri brought this action pro se on March 25, 2022, alleging retaliation and

discrimination in violation of Title VII of the Civil Rights Act ("Title VII") and the Age

Discrimination in Employment Act of 1964 ("ADEA").  See Compl at 1–3.  GWUH filed a motion

to dismiss his claims in May 2022, arguing that Nwaneri did not "timely pursue his administrative

remedies and timely file a Charge of Discrimination" with the EEOC and that he failed to state a

claim under either Title VII or the ADEA.  Def.'s Mot. to Dismiss Compl. [ECF No. 15] ("Mot.

to Dismiss") at 2.  Nwaneri opposed that motion, see Pl.'s Opp'n to Mot. to Dismiss [ECF No.

21], and GWUH filed a reply in support of its motion, see Def.'s Reply to Pl.'s Opp'n to Mot. to

Dismiss [ECF No. 23].

Despite the motion to dismiss being fully briefed, Nwaneri filed a motion seeking to amend

his complaint.  See Pl.'s Mot. to Amend Compl. Under Rule 15 [ECF No. 24].  Nwaneri had been

4

seeking counsel throughout the litigation and represented that he had identified "counsel who is willing to provide [l]egal [r]epresentation" if Nwaneri was permitted to amend his complaint. See id. at 1–2. GWUH opposed the motion to amend, noting that Nwaneri did not attach the proposed amended complaint and it was thus "unable to substantively evaluate the merits" of the motion to amend. Def.'s Mem. of P. & A. in Opp'n to Pl.'s Mot. to Amend [ECF No. 25]. Nwaneri then filed the proposed amended complaint. See Am. Compl. The new proposed complaint has three claims: breach of contract, tortious interference, and discrimination. Id. ¶¶ 26–60. GWUH filed a supplemental memorandum opposing Nwaneri's motion to amend the complaint, arguing that allowing him to amend would be futile as the new claims should also be dismissed. See Def.'s Suppl. Opp'n to Pl.'s Mot. for Leave to Amend Compl. [ECF No. 31] ("Opp'n to Am. Compl."). Nwaneri responded to the supplemental memorandum. See Reply to Opp'n to Am. Compl. [ECF No. 32].[2] Thus, GWUH's motion to dismiss the original complaint and Nwaneri's motion to amend the complaint are now fully briefed and ripe for decision.

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiffs must plead facts with "enough heft to show that the pleader is entitled to relief," Twombly, 550 U.S. at 557 (cleaned up), but the complaint "does not need detailed factual allegations," id. at 555.

---

[2] Nwaneri also filed a motion to stay proceedings pending the admission of his proposed attorney to the District Court of the District of Columbia. See Pet. to Pause Proceedings Pending Admission of Pl.'s Counsel [ECF No. 33]. Because Nwaneri's proposed attorney was not admitted following his application, the Court will deny the motion to stay.

Although courts "should freely give leave" to amend a pleading "when justice so requires," Fed. R. Civ. P. 15(a)(2), "[l]eave may properly be denied if the proposed amendment is futile, such that it would not withstand a motion to dismiss," Singletary v. Howard Univ., 939 F.3d 287, 295 (D.C. Cir. 2019) (cleaned up).

## Analysis

Nwaneri's breach of contract and tortious interference claims appear only in his proposed amended complaint.  For the reasons below, the Court concludes that both claims are untimely and would not "withstand a motion to dismiss," and as such, allowing Nwaneri to amend his complaint to include them would be futile.  See Singletary, 939 F.3d at 295.  Nwaneri's original complaint raised only a discrimination claim, and he brings a very similar discrimination claim in his proposed amended complaint.[3]  Because the Court concludes that the discrimination claim is untimely as presented in both complaints, it will deny Nwaneri's motion to amend the complaint and dismiss the original complaint.

### I.    Breach of Contract Claim

Nwaneri's first claim in his amended complaint is for breach of contract.  Under District of Columbia law, a breach of contract claim requires a showing of "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009).

D.C. Code § 12-301(7) imposes a three-year statute of limitations for breach of contract actions.  Nwaneri filed his complaint on March 25, 2022, so "his claim for breach of contract was untimely unless the cause of action accrued within three years of that date." Wright v. Howard Univ., 60 A.3d 749, 752 (D.C. 2013).  "[A]n action for breach of contract generally accrues at the

---

[3] Nwaneri brings both race and age discrimination claims, but they are styled as one claim in his complaint and the Court will refer to them as one claim for purposes of the timeliness discussion.

time of the breach." <u>Ohana v. Acad. Express, LLC</u>, Civ. A. No. 18-2127 (RC), 2022 WL 2952400, at *5 (D.D.C. July 26, 2022) (quoting <u>Wright</u>, 60 A.3d at 751).

Nwaneri alleges that he was "in a contractual relationship with GWUH as a vascular surgeon," Am. Compl. ¶ 1, and that contract included "[c]onsent to the bylaws and assumption of the mutual obligations," <u>id.</u> ¶ 28. "The offer and acceptance of hospital privileges was an agreement that adopts and binds physicians and [the] hospital to the bylaws." <u>Id.</u> ¶ 29. GWUH breached that contract, Nwaneri alleges, in numerous instances when GWUH violated sections of the bylaws. <u>Id.</u> ¶ 30. Because none of the alleged breaches—the bylaw violations—took place within three years of March 25, 2022 (that is, all happened before March 25, 2019), the Court concludes that Nwaneri's breach of contract claim is untimely.

The surgical incident that set off Nwaneri's troubles happened on August 21 and 22, 2017. <u>See</u> Am. Compl. ¶ 8. Nwaneri was informed of his suspension on September 21, 2017, <u>id.</u> ¶ 10, and he alleges that his lack of "prior official notice of []his suspension" was "a violation of section 6.3 of the bylaws." <u>Id.</u> The first alleged breach thus happened sometime between August 21 and September 21, 2017.

He next alleges that on November 1, 2017, the Ad Hoc Committee that reviewed his precautionary privilege suspension violated bylaw section 6.4.2.3 by meeting "two days after the fourteen days" required by that bylaw. Am. Compl. ¶ 14. Then in February 2018, GWUH allegedly violated bylaw section 6.5 when the Fair Hearing Committee failed to convene within 60 days of notification of Nwaneri's privilege revocation. <u>See id.</u> ¶ 18 (noting that the proceedings were supposed to take place before February 12, 2018, but the Committee did not convene until April 25, 2018); <u>id.</u> ¶ 30 (listing breach of bylaw section 6.5, "[f]ailures of process"). Similarly,

the Fair Hearing Committee's report "should have been submitted by August 29, 2018" under bylaw section 6.5.2.3, but "it was submitted on October 30, 2018." Id. ¶ 18.

Nwaneri alleges that his privileges expired on October 31, 2018, Am. Compl. ¶ 20, due to "an erroneous calculation of cases for re-credentialing and failure to automatically send Plaintiff re-application materials," id. ¶ 23. This, presumably, was a violation of bylaw sections 5.1.2.1 and 5.8.3. See id. ¶ 30. Thus, while it is not clear when the "[f]ailure to automatically send" him the "application for reappointment," id., occurred, the latest it could have happened is October 31, 2018, the date the privileges expired.

Nwaneri also alleges a violation of bylaw section 5.9.4, which he describes as a "[f]ailure to issue temporary privileges." Am. Compl. ¶ 30. He does not state when such temporary privileges should have been issued under the bylaws. But his complaint does state that the Fair Hearing Report—dated November 1, 2018, id. ¶ 20—restored all his privileges, id. ¶ 21. Accordingly, any failure to issue temporary privileges must have occurred at some point prior to November 1, 2018.

Finally, Nwaneri alleges a violation of bylaw section 6.6, which he describes as "[f]ailures of [a]ppellate [r]eview." Am. Compl. ¶ 30. According to the proposed amended complaint, the Appellate Panel was supposed to convene to hear Nwaneri's appeal of the Fair Hearing Committee's report "six months earlier . . . [than] May 23, 2019"—around November 2018. Id. ¶ 22. It thus violated this bylaw when that date passed without yet convening.

Accordingly, Nwaneri alleges no bylaw violation or other breach of a contract between himself and GWUH later than November 2018. Because "[a]n action for breach of contract generally accrues at the time of the breach," Wright, 60 A.3d at 751, the action accrued at the latest

in November 2018—more than three years before Nwaneri filed his complaint on March 25, 2022. The Court will therefore dismiss his breach of contract claim as untimely.

## II.    Tortious Interference with Business Relations Claim

Nwaneri's second claim in his proposed amended complaint alleges tortious interference with a business relationship.  "[T]o establish a prima facie case of tortious interference with contractual or other business relationships in the District of Columbia, a plaintiff must prove four elements: (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages." NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc., 957 A.2d 890, 900 (D.C. 2008) (footnotes omitted).

The statute of limitations on a tortious interference claim is also three years. See D.C. Code § 12-301(8); Capitol Servs. Mgmt., Inc. v. Vesta Corp., 933 F.3d 784, 790 (D.C. Cir. 2019) (applying three-year statute of limitations to tortious interference claim).  "Ordinarily under District law, the statute of limitations for a tort claim starts to run when the plaintiff is injured." Capitol Servs. Mgmt., 933 F.3d at 790.

Nwaneri identifies several actions taken by GWUH that he alleges constitute tortious interference.  He first points to the "issuance of a pre-dated finding one day after the expiration of Plaintiff's privileges" and an error in "determin[ing] the issue of [recredentialing]," Am. Compl. ¶ 40, on which "[t]he expiration of Plaintiff's privileges was premised," id. ¶ 23.[4]  Nwaneri's privileges expired on October 31, 2018, and the "pre-dated finding" to which Nwaneri refers happened a day earlier.  See id. ¶ 20.  Nwaneri also argues that GWUH unnecessarily and

---

[4] In his claim for tortious interference, Nwaneri alleges that "Defendant relied on medical cases from 2018 to 2019 to determine the issue of [recredentialing]."  Am. Compl. ¶ 40.  This is inconsistent with the timeline and allegations earlier in the complaint.  See id. ¶ 23 (noting that GWUH should have "relied on cases performed from 2016 to 2018," but instead "relied on cases from 2018 alone").

incorrectly included harmful language in its report to the National Practitioner Data Bank, see id. ¶ 41, which was submitted on November 9, 2017, id. ¶ 19.

Although Nwaneri does not describe his precise injury and when it occurred, he does generally describe the harm as his inability to find work at other hospitals due to expiration of his privileges and the wrongful reporting by GWUH.  The date on which he was injured by the alleged tortious acts is thus, at the latest, October 31, 2018, when Nwaneri's privileges expired.[5] Accordingly, the cause of action began to accrue then, and his complaint filed in March 2022 was untimely.

### III.   Race and Age Discrimination Claim

Nwaneri's proposed amended complaint pleads violations of Title VII, the ADEA, and the D.C. Human Rights Act ("DCHRA").  See Am. Compl. ¶¶ 47–59.  His original complaint pleads a similar claim, but only violations of Title VII and the ADEA.  See Compl. at 2.  Specifically, he alleges that he "was subject to increased scrutiny, ultimately resulting in his dismissal from employment as a result of his age and race."  Am. Compl. ¶ 57; see Compl. at 2.

"[I]t is clear that a timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court."  Jarrell v. U.S. Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) ("A claim is time barred if it is not filed within these time limits.").  Claims brought under the ADEA are subject to the same timeliness and exhaustion requirements.  See, e.g., Achagzai v. Broad. Bd. of Governors, 170 F. Supp. 3d 164, 172 (D.D.C. 2016) (noting plaintiffs are subject to "the same administrative

---

[5] It may be that the most serious impacts from the suspension of privileges—say, his rejection from another job—did not happen until sometime later.  But under D.C. law, a tortious interference claim accrues when the plaintiff "knew or should have known that [he] was appreciably injured."  Beard v. Edmondson & Gallagher, 790 A.2d 541, 547 (D.C. 2002) (rejecting application of the continuous-tort doctrine for tortious interference claims).  That happened when Nwaneri's privileges were suspended or at the time when GWUH submitted the negative report to the NPDB— both outside of the three-year limitations period.

exhaustion framework for their ADEA claims as the one that guides their Title VII claims"). Plaintiffs bringing ADEA and Title VII claims in D.C. have 300 days following the alleged discrimination to file a charge with EEOC.  See Greer v. Bd. of Trustees of Univ. of D.C., 113 F. Supp. 3d 297, 306–07 (D.D.C. 2015) (explaining that to bring Title VII and ADEA claims in D.C., the EEOC "charge must be filed within 300 days of the discriminatory act").  If a plaintiff does not file a charge alleging Title VII and ADEA claims within the "300-day statute of limitations period," Schuler v. PricewaterhouseCoopers, LLP, 514 F.3d 1365, 1370 (D.C. Cir. 2008), he will "lose the ability to recover for it," Nat'l R.R. Passenger, 536 U.S. at 110.

A DCHRA claim must be filed "within one year of the unlawful discriminatory act, or the discovery thereof," D.C. Code § 2-1403.16(a), but the filing of an EEOC complaint within the statute of limitations automatically tolls it, see McFadden v. Wash. Metro. Area Transit Auth., 204 F. Supp. 3d 134, 142–43 (D.D.C. 2016).

Nwaneri first contacted the EEOC on April 30, 2021.  See Compl. at 12.  The alleged discrimination—his treatment following the surgery and his subsequent privilege revocation— happened years before, and thus his discrimination claim was not filed within the statute of limitations.  Nwaneri does not plead or argue that his discrimination claims are timely.  See Am. Compl. ¶¶ 52–53; Reply to Opp'n to Am. Compl at 5.  He argues, however, that the Court should toll the statute of limitations under the doctrines of equitable tolling and equitable estoppel.  See Am. Compl. ¶¶ 52–56; Reply to Opp'n to Am. Compl. at 5.

Courts must "consider whether equitable principles warrant[] a tolling of the filing period." Jarrell, 753 F.2d at 1091; see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject

to waiver, estoppel, and equitable tolling.").  There are two primary equitable doctrines under which a court may toll the statute of limitations.  First, equitable tolling "applies most commonly when the plaintiff 'despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim.'"  Chung v. U.S. Dep't of Just., 333 F.3d 273, 278 (D.C. Cir. 2003) (quoting Currier v. Radio Free Eur., 159 F.3d 1363, 1367 (D.C. Cir. 1998)).  "[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  The second doctrine, equitable estoppel, "precludes a defendant, because of his own inequitable conduct—such as promising not to raise the statute of limitations defense—from invoking the statute of limitations."  Chung, 333 F.3d at 278.

Starting with his equitable tolling argument, Nwaneri has not pled any facts suggesting that, despite his due diligence, some "extraordinary circumstance," Pace, 544 U.S. at 418, prevented him from timely filing the EEOC complaint.  His complaint contains no facts after 2019, meaning that he "has known about the relevant facts" since well before he filed the EEOC complaint in 2021 or this lawsuit in 2022.  See Mizell v. SunTrust Bank, 26 F. Supp. 3d 80, 87 (D.D.C. 2014).  Indeed, his complaint describes relatively prompt communication from GWUH about his status, see, e.g., Am. Compl. ¶¶ 14–15, and does not allege any concealed or missing information.  Nwaneri thus gives the Court no reason to believe that his delay was due to his inability "to obtain vital information bearing on the existence of his claim."  Chung, 333 F.3d at 278.

Nwaneri's equitable estoppel argument—which "is based upon the conduct of the defendant," Chung, 333 F.3d at 279—fares no better.  Nwaneri has not alleged any specific misconduct on behalf of GWUH related to his ability to file a complaint with the EEOC or

otherwise seek relief.  The only facts he alleges that may bear on the delay are related to GWUH's failure to hold various hearings in the time frame required by the bylaws.  See, e.g., Am. Compl. ¶ 22; id. ¶ 56 ("[H]ad the procedure been conducted in accordance with the bylaws, Plaintiff would have had ample time to bring the claims.").  But drawing out the review of a decision by a few months is not "inequitable conduct prevent[ing] a plaintiff from realizing his or her claim." Cheyenne-Arapaho Tribes of Okla. v. United States, 517 F. Supp. 2d 365, 374 (D.D.C. 2007), aff'd 558 F.3d 592 (D.C. Cir. 2009).  As discussed above, Nwaneri was fully informed of the proceedings and outcomes, and he was free to file an EEOC complaint at any point based on the decisions made by the various committees and other decisionmakers throughout 2017 and 2018. Perhaps realizing that simple delay on GWUH's part is insufficient, Nwaneri also argues that he "was not notified of his right to pursue claims with the EEOC" until it was too late.  Am. Compl. ¶ 56.  But GWUH has no obligation to inform Nwaneri of his rights, and thus its failure to do so does not constitute inequitable conduct.

Because Nwaneri has alleged no facts suggesting that his delay is attributable to anything other than his own inaction, the Court declines to toll the statute of limitations and his discrimination claim is thus untimely. [6]

### Conclusion

Nwaneri's original discrimination claim is barred by the statute of limitations and thus the Court will grant GWUH's motion to dismiss it.  The Court will also deny Nwaneri's motion to

---

[6] In his reply, Nwaneri asserts that the Court should toll the statute of limitations for his breach of contract and tortious interference claims for the same reasons.  See Reply to Opp'n to Am. Compl. at 3–5.  Nwaneri has not given any additional reason why the statute of limitations should be tolled for those claims, and thus the Court will not toll it for the same reasons it declines to toll it for Nwaneri's discrimination claim.

amend his complaint, as each of the proposed claims is untimely and amendment would therefore be futile.  A separate Order will accompany this Opinion.


/s/
JOHN D. BATES
United States District Judge

Dated: <u>March 20, 2023</u>